*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

HELEN JORDAN,

        Plaintiff-Appellee,

v

DEPARTMENT OF HEALTH AND HUMAN SERVICES, formerly known as DEPARTMENT OF MENTAL HEALTH,

        Defendant-Appellant.

FOR PUBLICATION
December 10, 2020
9:15 a.m.

No. 349641
Michigan Compensation Appellate
      Commission
LC No. 17-000029

Before: MARKEY, P.J., and METER and GADOLA, JJ.

MARKEY, P.J.

Defendant Department of Health and Human Services (DHHS) appeals by leave granted[1] an order of the Michigan Compensation Appellate Commission (MCAC) that reversed a magistrate's order denying the continuation of benefits for plaintiff Helen Jordan under the Workers' Disability Compensation Act (WDCA), MCL 418.101 *et seq.* Jordan, a DHHS nurse, suffered a work-related back injury in 1995 and, ever since, she has been prescribed opioids by health professionals to treat back and leg pain. Jordan received workers' compensation benefits on the basis of the incident for 20 years. In 2015, DHHS terminated the benefits after Jordan underwent independent medical examinations (IMEs). Jordan challenged the decision. And in 2017, the magistrate found that Jordan's loss of wage-earning capacity was unrelated to her work injury; rather, it was due to chronic opioid use and thus she was not entitled to benefits. As part of the magistrate's analysis, she agreed with DHHS's expert that Jordan was suffering from age-related degenerative changes to the lumbar spine and had chronic pain of unknown etiology. The MCAC reversed, concluding that Jordan was disabled because of her use of prescribed opioids, that her opioid use was directly traceable to alleviating symptoms connected to the injuries sustained in the 1995 work incident, and that the treatment with opioids was reasonable and

---

[1] *Jordan v Dep't of Health and Human Servs*, unpublished order of the Court of Appeals, entered October 31, 2019 (Docket No. 349641).

-1-

necessary under the circumstances. On appeal, DHHS argues that the MCAC erred by reversing the magistrate's order because treatment of Jordan's back and leg pain with opioids is not reasonable or necessary. DHHS principally contends that the MCAC did not apply the proper deferential standard of review to the magistrate's fact-finding. We agree with DHHS. Accordingly, we reverse and remand for entry of judgment in favor of DHHS consistent with the magistrate's ruling.

In 1990, Jordan was hired by DHHS to work at the Hawthorn Center as a registered nurse. She treated adolescents with behavioral problems. On October 3, 1995, Jordan was involved in an altercation with a female patient while at work. The patient pulled Jordan to the ground, causing Jordan to hit her back and head on the floor and resulting in loss of consciousness for approximately five minutes. The assault led to 20 years during which Jordan complained of back and leg pain, was treated by a series of health professionals, received workers' compensation benefits, and was prescribed and used opioids for the pain.

At DHHS's request, Jordan participated in two IMEs conducted by Dr. Philip J. Mayer, an orthopedic surgeon, in February 2015 and August 2016. Dr. Mayer opined that a surgical lumbar laminectomy performed years earlier on Jordan was not necessary and that no treatment was required for Jordan's spine. In addition, Dr. Mayer concluded that Jordan's 1995 incident at work was not the cause of her back and leg pain; rather, it resulted from degenerative changes to her spine. He also believed that the opioids being taken by Jordan were not justified or appropriate for treating her chronic pain.

In light of Dr. Mayer's medical opinions, DHHS terminated Jordan's WDCA benefits in March 2015. Jordan then submitted an application for mediation or hearing, seeking reinstatement of her benefits. The magistrate held a hearing on Jordan's application over two days in April and May 2017. The parties stipulated to several facts, including the following: (1) Jordan was an employee of the DHHS on the alleged injury date of October 3, 1995; (2) the parties were subject to the WDCA at the time of the assault; (3) Jordan's "personal injury arose out of and in the course of employment"; (4) DHHS "had notice . . . of the personal injury during the statutory prescribed period"; (5) the value of Jordan's "discontinued fringe benefits was $633.40 and the appropriate compensation rate after coordination was $153.83"; (6) Jordan was paid "[w]orkers' compensation benefits of $153.83 a week until March 31, 2015"; and (7) "[i]t was disputed that [Jordan's] disability is due to the alleged personal injury." Jordan presented deposition testimony by Drs. Blaise Audet, Jack Belen, and Herbert Mendelson, as well as by James Fuller, a vocational expert. Jordan also testified on her own behalf. DHHS presented the deposition testimony of Dr. Mayer and vocational expert John Stokes. Also, DHHS called to the stand private investigator David Bergman. Numerous medical reports and records, which referenced various physicians and their diagnoses, were admitted into evidence.

On June 22, 2017, the magistrate issued an order and opinion denying Jordan continuing benefits under the WDCA. For purposes of our analysis, it is important to understand the full extent of the magistrate's ruling; consequently, we shall quote at length from the decision of the magistrate:

It is undisputed that [Jordan] sustained an injury to her back on October 3, 1995 while restraining a patient. It is also undisputed that [Jordan] was paid

-2-

worker's disability compensation payments from the date of injury in 1995 until 2015. The issue therefore is not whether [Jordan] was disabled from the initial injury on October 3, 1995 but whether she continues to be disabled from the 1995 injury.

* * *

I give no weight to Dr. Belen's testimony. Dr. Belen said working would likely cause pathologic worsening of [Jordan's] underlying condition and likely thwart any treatment to make her feel better. [Jordan] has not worked in over 20 years so her condition was not worsened due to work and there was no evidence presented of any treatment to make her feel better other than increased amounts of opioids. Dr. Belen suggested [Jordan] continue treating with the doctor prescribing her analgesic medication. However, Dr. Belen had agreed that some recent medical studies have shown that narcotic medications such as OxyContin and Oxycodone are not effective in the treatment of chronic pain and there are significant side-effects and issues regarding the person's ability to function as a result of long-term use of these types of medications.

I also reject Dr. Belen's testimony that [Jordan] is permanently and totally disabled as a result of the injury she sustained in October 1995 and unable to return to her employment as an RN. In *Peterson v Consumers Energy Company*, 2012 ACO #31[,] the Appellate Commission held that a doctor's opinion that the plaintiff cannot work does not constitute competent evidence as to disability. While the doctor qualifies as a competent medical expert, a medical doctor cannot in most instances provide an expert opinion regarding the translation of medical restrictions into vocational outcome. *Peterson*, supra.

Dr. Mendelson last treated [Jordan] on October 15, 1996 and he evaluated plaintiff on April 28, 2015. Dr. Mendelson said [Jordan's] surgery in 1996 did not improve her condition enough to return to work or make her more functional. He said [Jordan's] mild foot drop was an indication of a lack of improvement in the radiculopathy he diagnosed in 1995. Dr. Mendelson testified [that Jordan] was incapable of working as an RN as she was not responding to treatment but he could not say that she was unable to perform any work. Dr. Mendelson also testified that the long-time narcotic medications [Jordan] was taking were not useful for the treatment of chronic pain and she was addicted to and dependent on the narcotics. Dr. Czuk-Smith, Dr. Chatas, Dr. Washabaugh, and Dr. Benecke all noted [Jordan's] narcotic dependence.

There was a voluminous amount of medical records and reports introduced into evidence from the various doctors that either evaluated or treated [Jordan] subsequent to the assault in 1995. In all of the records there is no diagnosis of osteoarthritis until Dr. Hardman states in his records on August 4, 2003 and March 30, 2004 that [Jordan] was seen for reevaluation of osteoarthritic symptoms and osteoarthritic pains in her back and legs. Dr. Hardman said [Jordan] has had chronic

pain in her back, leg and knee since the assault in 1995. He evaluated [Jordan] in June 2007 for arthritic pain in her low back and hip secondary to the 1995 trauma.

Osteoarthritis is a condition of the aging process and Section 301(2) of the Act states conditions of the aging process shall be compensable if contributed to or aggravated or accelerated by the employment in a significant manner. However this test applied only to injuries occurring on or after December 19, 2011. *Woods v Eaton Corp.*, 210 ACO #9; *Hunt v Michigan Auto Compressor, Inc.*, 1999 #133 held when degenerative arthritis was caused by a traumatic incident, it is not considered a condition of the aging process and the significant manner test is not applied.

Dr. Hardman said [Jordan's] osteoarthritis was aggravated by the assault in 1995. I reject Dr. Hardman's opinion that [Jordan's] osteoarthritis was aggravated by the 1995 assault. The only mention of failed back syndrome in Dr. Hardman's records was the letter he authored on May 29, 2015. His prior diagnoses were osteoarthritis. Dr. Hardman attributes all of [Jordan's] ailments/conditions to the assault of 1995 with no supporting evidence. The assault occurred in 1995, nine years before Dr. Hardman diagnoses.

I give greater weight to Dr. Mayer's findings of age-related degenerative changes in [Jordan's] lumbar spine and chronic opioid use. *I accept Dr. Mayer's diagnosis of status post decompressive laminectomies to the left at L3-4 and L4-5, chronic pain of unknown etiology, age-related degenerative changes in the lumbar spine, opioid dependency and chronic opioid use*. His diagnoses are supported by the record.

The doctors at the Comprehensive Pain Clinic, Dr. Mendelson and Dr. Mayer testified or have stated [Jordan] is addicted to and dependent on the opioids. Mr. Fuller testified that [Jordan's] use of narcotics would render her unemployable with no vocational options and no wage earning capacity. Mr. Stokes agreed [Jordan's] use of opioids would be an impediment to the jobs he located. *Therefore, [Jordan's] loss of wage earning capacity is not related to her 1995 work injury but to her opioid dependency*. [Emphasis added.]

On August 7, 2017, Jordan filed a claim for review of the magistrate's order. She argued that the magistrate failed to consider the entire record when rendering the opinion and order. Jordan also contended that the magistrate's findings were not supported by the evidence presented by the parties. Lastly, Jordan maintained that the magistrate's conclusion that she was not entitled to benefits because of her opioid dependency was erroneous.

DHHS responded, arguing that the magistrate considered the entire record, that the denial of benefits was supported by the evidence, and that Jordan's loss of wage-earning capacity was unrelated to her injury in 1995. On June 5, 2019, the MCAC, relying on this Court's opinion in *Staggs v Genesee Dist Library*, 197 Mich App 571; 495 NW2d 832 (1992), issued its opinion and order reversing the magistrate's decision. The MCAC ruled:

Most troubling with the last sentence of the magistrate's reasoning is that her conclusion flies in the face of *Staggs* . . . . In *Staggs*, the plaintiff suffered a fall in the work place, injuring his back and right hip. He was off work for nearly six months and sought treatment for persistent back pain. Eventually, plaintiff underwent a myelogram procedure and suffered serious side effects. The side effects likewise persisted and plaintiff could only return to work with restrictions. However, no favored work was available.

Plaintiff Staggs applied for benefits and the referee denied those benefits based on a finding that the fall did not significantly contribute to his longstanding orthopedic problems. The Workers' Compensation Appeal Board reversed the referee finding that although the fall neither caused nor aggravated the back condition, he was entitled to benefits because the injury was caused by the myelogram that was ordered to diagnose the cause of persistent symptoms from the fall at work. The court held in *Staggs* that where the reasonable treatment of a work-related injury results in disability, the injured employee is entitled to benefits, even if the underlying injury did not itself result in disability.

In the case at bar, as the magistrate correctly recognized, [Jordan] had received over 20 years of treatment from multiple treating physicians since the incident in October of 1995 by the time of trial. Along with surgery and multiple different therapies, her treatment consisted of ever-growing doses of various opioid medications. There is no evidence of opioid use prior to the incident and no evidence of illegal opioid use. The record is clear that [Jordan's] opioid use was occasioned by prescriptions from her various treating physicians and several pain clinics.

Inasmuch as [Jordan's] vocational expert, Mr. James Fuller, and [DHHS's] vocational expert, Mr. John Stokes, agree that [Jordan's] opioid use precludes her from the workforce, we conclude that [Jordan] is disabled because of said opioid use. Because the opioid use is directly traceable to ameliorating the well documented symptoms incurred from the work incident in October of 1995, we further conclude that [Jordan] is entitled to benefits pursuant to the reasoning of *Staggs*, supra. Further, in that the record is replete with testimony that the opioids have consistently reduced [Jordan's] pain levels to allow her some quality of life, we find that the opioid prescriptions were reasonable and necessary on this particular record. See *Dixon v General Motors Corporation*, 2019 Mich ACO 3.

The MCAC reversed the magistrate's order, thereby entitling Jordan to continue receiving WDCA benefits. DHHS appeals by leave granted.

In *Omer v Steel Technologies, Inc*, __ Mich App __, __; __ NW2d __ (2020); slip op at 7, this Court articulated the various applicable standards of review:

The MCAC reviews the magistrate's factual findings under the substantial evidence standard. Substantial evidence is such evidence, considering the whole record, as a reasonable mind will accept as adequate to justify the conclusion. The

MCAC must consider as conclusive the findings of fact made by a workers' compensation magistrate, as long as those facts are supported by competent, material, and substantial evidence on the whole record.

The MCAC has limited fact-finding power. It may substitute its own factual findings for those of the magistrate when a qualitative and quantitative analysis of the record yields a different result. However, the MCAC's factual review of the magistrate's opinion is not de novo. Rather, it involves reviewing the whole record, analyzing all the evidence presented, and determining whether the magistrate's decision is supported by competent, material, and substantial evidence. In other words, the MCAC must begin by considering the whole record to determine whether the evidence considered by the magistrate meets the legislative standard of competent, material, and substantial evidence. If it does, further review exceeds the MCAC's authority. The MCAC is not empowered to set aside findings merely because alternative findings also could have been supported by substantial evidence on the record.

This Court must treat the MCAC's factual findings as conclusive if there is any competent record evidence supporting them. But we are empowered to review de novo questions of law embedded within a final order. A decision of the MCAC is subject to reversal if it is based on erroneous legal reasoning or the wrong legal framework. [Quotation marks, citations, and alterations omitted.]

"An employee, who receives a personal injury arising out of and in the course of employment by an employer who is subject to this act at the time of the injury, shall be paid compensation as provided in" the WDCA. MCL 418.301(1); see also *Rakestraw v Gen Dynamics Land Sys, Inc*, 469 Mich 220, 225; 666 NW2d 199 (2003). A "disability" under the WDCA is defined as a "limitation of an employee's wage earning capacity in work suitable to his or her qualifications and training resulting from a personal injury or work-related disease." MCL 418.301(4); see also *Sington v Chrysler Corp*, 467 Mich 144, 155; 648 NW2d 624 (2002).

In *Staggs*, 197 Mich App 571-573, this Court described the underlying facts, stating as follows:

On June 23, 1984, while working for defendant Genesee District Library as a library technical assistant, plaintiff tripped over a floor grate and fell into some shelving and onto the concrete floor. Shortly thereafter, plaintiff felt sharp pains in his back and right hip. Plaintiff was subsequently off work until December 6, 1984, during which time he received benefits. Also during this time, plaintiff sought medical treatment for persistent back pain. The treatment included a myelogram on November 9, 1984. Unfortunately, the myelogram caused plaintiff serious side effects, including nausea, headaches, and double vision. As a result, plaintiff was hospitalized for nine days. The side effects of the myelogram persisted and, consequently, plaintiff is only able to return to work with restrictions, which the library apparently cannot accommodate.

Plaintiff applied for workers' compensation benefits, alleging personal injury and occupational disease beginning June 23, 1984, due to lower back injuries and complications from the myelogram. It is basically undisputed that plaintiff sustained a work-related injury when he fell in June 1984 and that the myelogram was performed because plaintiff's symptoms persisted. However, evidence was presented before the hearing referee that the June 1984 fall had not caused or aggravated plaintiff's longstanding orthopedic problems. Evidence was presented that plaintiff had a pin surgically placed in his right hip during childhood because of a congenital condition, and that plaintiff thereafter periodically experienced pain in that hip. Hospital records indicated that plaintiff had been in an automobile accident in 1980, which resulted in plaintiff having a back spasm. Plaintiff also injured his back in 1982 while bending down to load books while working for the library. After bed rest was prescribed and plaintiff was off work for six weeks, all symptoms had cleared up. Plaintiff also injured his hip in November 1983 during a fall that was not related to work. Dr. Gutscher, who treated plaintiff shortly after the June 1984 fall, opined that, although the fall caused plaintiff back pain at the time, plaintiff's current back and hip problems were related to degenerative disc disease and degenerative arthritis. Dr. MacNeil, an expert retained by defendants, examined plaintiff after the fall, found no link between the fall and the persistent back condition, and opined that the symptoms arising from the strain caused by the fall should have been resolved by October 1984.

The plaintiff was denied workers' compensation benefits by the hearing referee on the basis that the plaintiff had not been disabled from performing his job and that the injury in June 1984 did not contribute significantly to the plaintiff's longstanding orthopedic problems. *Id.* at 573. The Workers' Compensation Appeal Board (WCAB), a precursor to the WCAC, reversed the referee's decision and awarded benefits to the plaintiff. *Id.* The WCAB ruled "that, although the June 1984 fall neither caused nor aggravated the back condition, the injury was compensable because plaintiff was disabled by complications resulting from the myelogram that was performed because of the persistent symptoms following the June 1984 fall." *Id.* The WCAB concluded that the diagnostic myelogram was only used because of the persistence of symptoms that followed the 1984 incident. *Id.*

This Court, in affirming the WCAB, agreed that "where medical treatment is necessitated by a work-related injury, and the medical treatment results in a disability, the claimant is entitled to benefits because the subsequent disability is traceable to the work-related injury." *Staggs*, 197 Mich App at 575. The Court further ruled:

Defendants argue that, because plaintiff's back condition was neither caused nor aggravated by the fall, an injury resulting from medical treatment cannot be traced to a work-related injury. Defendants, however, confuse plaintiff's preexisting health problems with the fact that plaintiff sought medical treatment as a result of pain experienced after the work-related fall and while plaintiff was receiving benefits for the disability arising from the fall. While we agree that under these circumstances plaintiff cannot recover benefits due to his preexisting back and hip problems, the disability resulting from the myelogram can be traced to the work-related fall that caused plaintiff to seek the medical treatment. We therefore hold

that where the reasonable treatment of a work-related injury results in disability, the injured employee is entitled to benefits, even if the underlying injury did not itself result in that disability. [*Id.* at 575-576.]

Here, the magistrate agreed with Dr. Mayer that Jordan was currently suffering from age-related degenerative changes in her lumbar spine with chronic pain of unknown etiology and that her dependency on opioids rendered her unemployable; therefore, her loss of wage-earning capacity was not related to her 1995 work injury but to her opioid use. The magistrate's ruling reflected a determination that Jordan's current back and leg pain could not serve as a disability justifying the *continuation* of workers' compensation benefits.[2] The MCAC did not rule otherwise, nor did it speak to that particular issue. The magistrate's decision also revealed that she did not contemplate whether the effect of opioid use or dependency, in and of itself, could constitute a disability that would allow for Jordan to continue receiving benefits. The MCAC, relying on *Staggs*, rendered its decision exclusively on the basis of Jordan's use of prescribed opioids, which left her unable to work. The principle or proposition that emanated from *Staggs* is that treatment provided in response to a work-related injury, if reasonable or necessary under the circumstances, can create or give rise to a disability causing loss of wage-earning capacity that entitles the employee to workers' compensation benefits, even if the physical injury alone would not have supported an award of benefits.

We conclude that *Staggs* does not support the MCAC's ruling. *Staggs* involved treatment—a diagnostic myelogram—that took place one time, resulting in adverse lingering effects that rendered the plaintiff unable to work. In this case, the relevant treatment involved prescriptions for opioids, which treatment was continually renewed over many years after numerous assessments and evaluations; this case did not entail a one-time treatment as in *Staggs*. This distinction is important. As reflected in *Staggs*, the medical treatment must be in response and traceable to a work-related event and injury. Because Jordan's use of opioids was part of ongoing treatment over several years and because this case concerns whether Jordan was entitled to continue receiving benefits in 2015, the injury-treatment examination must be viewed under the circumstances that existed in 2015.

The MCAC determined that Jordan's opioid use that caused her disability was "directly traceable to ameliorating the well documented symptoms incurred from the work incident in October of 1995." The MCAC employed the wrong legal framework, and its analysis was based on erroneous legal reasoning. The properly-framed question is whether Jordan's opioid use in 2015, i.e., the treatment at the time benefits were halted, was in response or traceable to the 1995 work-related injury, but only to the extent that the effects of that injury still existed in 2015 when she was still being prescribed the opioids. Without this linkage, Jordan would simply be a patient receiving opioid medication for back and leg pain unassociated with a work-related injury. And the magistrate found that Jordan was currently suffering from age-related degenerative changes in her lumbar spine with chronic pain of unknown etiology. In other words, the magistrate effectively

---

[2] The magistrate expressed that "[t]he issue . . . is not whether [Jordan] was disabled from the initial injury on October 3, 1995[,] but whether she *continues to be disabled from the 1995 injury*." (Emphasis added.)

determined that Jordan's 2015 opioid use was not for the purpose of alleviating pain associated with or caused by the 1995 assault; there was no longer a traceable connection between the opioid treatment and the work-related injury. The MCAC gave no weight to the magistrate's fact-finding and essentially exercised de novo review. "The MCAC is not empowered to set aside findings merely because alternative findings also could have been supported by substantial evidence on the record." *Omer*, __ Mich App at __; slip op at 7.

Furthermore, even if the opioids prescribed to Jordan in 2015 were for the treatment of current pain resulting from or caused by the 1995 work-related assault and injury, the MCAC's conclusion that the opioid prescriptions were reasonable and necessary was problematic. The magistrate, while not expressly indicating that treatment with opioids was unreasonable or unnecessary, agreed with the medical testimony that opioids were not effective, useful, or appropriate for the treatment of chronic pain. There was substantial evidence—indeed strong evidence—to support the magistrate's finding. Once again, the MCAC gave no weight to the magistrate's fact-finding and essentially exercised de novo review, which was improper. *Omer*, __ Mich App at __; slip op at 7. "The MCAC must consider as conclusive the findings of fact made by a workers' compensation magistrate, as long as those facts are supported by competent, material, and substantial evidence on the whole record." *Id.* The MCAC simply did not adhere to this principle.

Finally, to the extent that opioid addiction or dependency in 2015 can be linked to or developed out of the first use of opioids by Jordan in 1995 in treating her work-related injury, we conclude that an award of workers' compensation benefits would not be proper because the connection between the work-related injury and the disability, possible endless drug addiction, would be much too tenuous, thereby dishonoring the intent of the WDCA.

We reverse and remand for entry of judgment in favor of DHHS consistent with the magistrate's ruling. We do not retain jurisdiction. As the prevailing party, DHHS may tax costs under MCR 7.219.

/s/ Jane E. Markey
/s/ Michael F. Gadola